UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARVESTER J. JOHNSON,<br><br>    Plaintiff,<br><br>    v.<br><br>EBENEZER ESPINOZA,<br><br>    Defendant. | Case No. 22-cv-09197-WHO (PR)<br><br>**ORDER DENYING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT;**<br><br>**ORDER DIRECTING PLAINTIFF TO COMPLY WITH DISCOVERY REQUESTS AND SIT FOR A DEPOSITION;**<br><br>**SETTING CASE MANAGEMENT CONFERENCE**<br><br>Dkt. Nos. 48, 56, and 58 |

**INTRODUCTION**

Plaintiff Larvester J. Johnson alleges in this 42 U.S.C. § 1983 action that one of his jailors, Sergeant Ebenezer Espinoza, retaliated against him in violation of his First Amendment right to access the courts. He lists a series of incidents in his First Amended Complaint, but that is the only evidence of his perspective on his claims. He refused to sit for a deposition or comply with discovery requests from defendant.

Johnson has filed two motions for summary judgment, in response to which Espinoza has filed oppositions. It is clear that there are at a minimum facts in dispute that require denial of Johnson's motions for summary judgment.[1]

Espinoza has filed a motion for summary judgment, to which Johnson has not responded. It is unclear whether Johnson's allegations in the FAC, made under penalty of

---

[1] His motion for default judgment is also DENIED.

1  perjury, are sufficient to create a material dispute of fact that would defeat Espinoza's
2  motion. The FAC offers only speculation that Espinoza's actions, however objectionable,
3  were motivated by retaliation for Johnson's exercising his right of access. Johnson's
4  failure to sit for a deposition or produce documents works against him.
5    <u>I will defer ruling on defendant Espinoza's motion for summary judgment until
6  after Johnson has responded appropriately and fully to defendant's discovery requests and
7  has sat for a deposition. This should be done within 105 days as outlined at the end of this
8  Order. Johnson's failure to comply with the instructions in this Order likely will result in
9  the dismissal of this action under Federal Rule of Civil Procedure 41(b) for failure to
10 prosecute</u>.

**BACKGROUND**

### i. Procedural Background

13   Johnson's original complaint, which contained cognizable First Amendment access-
14 to-court and retaliation claims, was served on Sergeant Espinoza, a correctional officer at
15 the San Francisco County Jail. (Order of Service, Dkt. No. 10.) The access-to-court
16 claims have been dismissed with prejudice upon defendant's motion because Johnson had
17 not met the requirement to show that he suffered an actual injury from the alleged denial of
18 court access. (Order Granting Dismissal Motion in Part, Dkt. No. 38 at 4.) His retaliation
19 claims remain.
20   Johnson has filed a motion for summary judgment, to which defendant Espinoza
21 has filed an opposition. (Dkt. Nos. 48 and 52.) Espinoza has filed a motion for summary
22 judgment; Johnson has <u>not</u> filed an opposition. (Dkt. No. 53.) He did file a motion for
23 default judgment in which he contends defendant failed to defend against this suit. (Dkt.
24 No. 56.) After Espinoza filed an opposition to the default judgment motion, Johnson filed
25 another motion for summary judgment, in response to which Espinoza filed an opposition.
26 (Dkt. Nos. 57, 58, 59.)

### ii. Factual Allegations

28   In the operative complaint, Johnson alleges that in August 2022, Espinoza took and

searched his legal papers when he went to court. (First Am. Compl., Dkt. No. 23 at 2.) Defendant allegedly "took plaintiff discovery and evidence of a video and picture of someone else as the suspect," confiscated it and put it in the trash. (*Id.*) Johnson also alleges that Espinoza had handcuffed him in the holding cell and (along with unnamed others) beat him up "because plaintiff was yelling to them about his right to have access to the court and his First Amendment rights." (*Id.* at 3.)

Johnson also alleges that Espinoza wrote a "false" rules violation report against him so that he would remain "in the hold" for two weeks. (*Id.*) He alleges that on September 20, 2022, Johnson and defendant were yelling at each other and then defendant and others beat him up and confiscated a "statement that the victim and witness said that I was not the suspect." (*Id.*) He alleges that Espinoza instructed other officers not to take plaintiff to court that day. (*Id.*) Johnson alleges that on some date in September, defendant told Johnson that if he did as he was told, Espinoza wouldn't have to tell other officers to beat him up. (*Id.*)

Johnson also alleges that in October 2022, he went to court and obtained a "court order to let Defendant's search Plaintiff legal document" in front of him. (*Id.* at 4.) Espinoza also allegedly handcuffed and beat up Plaintiff. (*Id.*) It is alleged that on October 17, 2022, a state judge ordered Espinoza to explain why he took Johnson's documents. (*Id.*) It is alleged that on October 18, 2022, the judge concluded that the documents were legal documents. (*Id.*)

Johnson also claims that on April 16, 2024, which is the day he signed the first amended complaint, unnamed officers searched his cell, found a complaint, put it in the trash, and beat him up. He does not allege that Espinoza was involved. (*Id.* at 5.)

Espinoza points out that Johnson has not complied with discovery requests:

> On April 1, 2025, Defendant served Requests for Production and Interrogatories on Plaintiff, requesting information regarding Plaintiff's claims in this action . . . Defendant specifically asked for discovery regarding Plaintiff's retaliation claims, in anticipation of taking Plaintiff's deposition . . . Plaintiff did not respond at all . . . Notably, on or about the same time

3

period, Plaintiff contacted counsel for Defendant multiple times, requesting copies of documents filed in this case, which Defendant's counsel provided. (Def.'s Mot. for Summ. J., Dkt. No. 53 at 13-14.)

## STANDARD OF REVIEW

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). The Court is concerned only with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotations omitted).

**DISCUSSION**

i. **Johnson's First Motion for Summary Judgment**

In his first motion for summary judgment, Johnson attempts to relitigate his access-to-court claims, which have already been dismissed with prejudice. To the extent he moves for summary judgment on those claims, his motion is DENIED.

About his retaliation claims, he says only that "The defendant retaliate[d] on the plaintiff by allow[ing] other Deputy to beat up the plaintiff and to play a role by not allowing the plaintiff to go to court." (Pl.'s MSJ, Dkt. No. 48 at 4.) This is insufficient.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). A plaintiff has the burden of showing that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the defendant's actions. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997). Retaliation is not established simply by showing adverse activity by defendant after protected speech; rather, plaintiff must show a nexus between the two. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of post hoc, ergo propter hoc, i.e., "after this, therefore because of this"). Mere speculation that defendants acted out of retaliation is not sufficient. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases) (affirming grant of summary judgment where no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit).

To raise a triable issue as to motive, plaintiff must offer evidence that defendants knew about the protected conduct. *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009). In addition, plaintiff must show "either direct evidence of retaliatory motive or at least one

5

of three general types of circumstantial evidence [of that motive]." *McCollum v. California Dept. of Corrections and Rehabilitation*, 647 F.3d 870, 882 (9th Cir. 2011) (quoting *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002)). To survive summary judgment without direct evidence, therefore, plaintiff must "present circumstantial evidence of motive, which usually includes: (1) proximity in time between protected speech and the alleged retaliation; (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse ... action were false and pretextual." *McCollum*, 647 F.3d at 882 (internal quotation marks and citation omitted).

What follows is taken from the allegations in the FAC.

### a.  August 2022

During the August 2022 incident, Espinoza allegedly searched Johnson's legal papers, took some of them, and placed some in the trash. On the record presented by Johnson, Espinoza said nothing and did nothing showing that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind Espinoza's actions. It is speculative to infer that Espinoza's actions were in retaliation for exercising a constitutional right. *See Ibrahim v. Biter*, No. 1:11-cv-01265 JLT (PC), 2011 WL 4709882, at *3 (E.D. Cal. Oct. 4, 2011) (the district court concluded that "the mere fact that Plaintiff's cell was searched does not state a claim for retaliation. First, there are no facts alleged that the cell search was related to Plaintiff's filing of 620 inmate grievances. The fact that Plaintiff thinks it is so, doesn't make it so. He must allege facts in this regard, not his mere conclusions.").

Johnson's claim that Espinoza ordered other guards to beat him up "because plaintiff was yelling to them about his right to have access to the court and his First Amendment rights" is also speculative. Johnson makes the assumption that he was beaten up because he was yelling about his rights but offers no evidence for the claim. He will have the burden of proof at trial on this issue and as the moving party "bears the initial burden of proof at summary judgment as to each material fact to be established in the

6

1   complaint and must show that no reasonable jury could find other than for the moving
2   party." *Twitter Inc. v. Barr*, 445 F.Supp.3d 295, 302 (N.D. Cal. 2020). More information
3   is needed about this incident.

### b. September 2022

Johnson alleges that in September 2022: Espinoza wrote a "false" rules violation report against him so that he would remain "in the hold" for two weeks; that he and Espinoza had yelled at each other; that Espinoza beat him up, confiscated a statement from a witness who said he wasn't the suspect, and instructed other officers not to take plaintiff to court that day; and that Espinoza told Johnson that if he did as he was told, Espinoza wouldn't have to tell other officers to beat him up. This shows Espinoza's animosity but does not retaliation for exercising first amendment rights. Retaliation for the exercise of protected conduct must be the "substantial" or "motivating" factor behind Espinoza's actions.

### c. October 2022

Johnson alleges that in October 2022, Espinoza searched Johnson's legal documents in front of him, handcuffed and beat up him up, and that a state judge ordered Espinoza to explain why Espinoza took Johnson's documents. The reasons for Espinoza's conduct are not specified. This demonstrates hostility and aggression, not retaliation. for exercising first amendment rights.

### d. April 2024

Johnson alleges that on April 16, 2024, which is the day he signed the first amended complaint, unnamed officers searched his cell, found a complaint and put it in the trash, and beat him up. There are no allegations that Espinoza was involved.

### e. Summary

Johnson's allegations point to considerable animosity and bad behavior by Espinoza, but not that it was retaliation motivated by Johnson's First Amendment concerns. At a minimum, that is very much in dispute. This motion is DENIED.

### ii. Johnson's Second Motion for Summary Judgment

Johnson's second motion for summary judgment is a repetition of his first motion for summary judgment. Accordingly, it is DENIED. (Dkt. No. 58.)

Johnson's motion for default judgment, in which he contends defendant failed to respond to plead or otherwise defend against the action, is DENIED. (Dkt. No. 56.) As Espinoza's opposition points out, the docket clearly shows that defendant has defended against this action.

### iii. Defendant Espinoza's Motion for Summary Judgment

I will defer ruling on Espinoza's motion for summary judgment until after Johnson has complied with Espinoza's discovery requests and sits for a deposition. Within 30 days from the date of this Order, Espinoza shall serve on Johnson his Requests for Production and Interrogatories and file a short notice on the docket that the requests have been served. Within 45 days after being served with the requests, Johnson must fully comply fully with defendant's discovery requests, answer all questions, and provide all documents requested. During this time, he may also conduct discovery. <u>All responses to defendant's requests (and all requests for discovery from Johnson) must be sent to defendant, not to the Court</u>. Within 30 days after complying with defendant's discovery requests, Johnson must sit for a deposition arranged by defendant's counsel. <u>Failure to comply with these instructions within the time period stated likely will result in the dismissal of this action under Federal Rule of Civil Procedure 41(b) for failure to prosecute</u>.

## CONCLUSION

Johnson's two motions for summary judgment are DENIED. (Dkt. Nos. 48 and 58.) Johnson's motion for default judgment is DENIED. (Dkt. No. 56.)

Johnson must comply with the discovery requirements outlined above. Failure to do so likely will result in the dismissal of this action under Rule 41(b) for failure to prosecute.

A Case Management Conference is set for **April 7, 2026**, at 2:00 p.m. by Zoom videoconference. The parties' Joint Case Management Statement shall be filed by March

8

31, 2026.

**IT IS SO ORDERED.**

**Dated:** December 22, 2025

WILLIAM H. ORRICK
United States District Judge